UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CARRIE SCHEUFELE, JEFFREY
SCHEUFELE and NICHOLAS ORAM,
Individually and on Behalf of All Others
Similarly Situated,

                       Plaintiffs,

     vs.

TABLEAU SOFTWARE, INC., CHRISTIAN
CHABOT, THOMAS WALKER, PATRICK
HANRAHAN and CHRISTOPHER STOLTE,

                    Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:17-cv-05753-JGK

CLASS ACTION

LEAD PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF UNOPPOSED
MOTION FOR (I) PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT; AND (II) APPROVAL OF
NOTICE TO THE CLASS

**TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  HISTORY OF THE LITIGATION ..............................................................................3

III.  SETTLEMENT NEGOTIATIONS ..............................................................................4

IV.  SETTLEMENT TERMS ..............................................................................................5

V.  PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD
PLAINTIFF TO NOTIFY THE CLASS ......................................................................6

    A.  The Rule 23(e)(2) Factors Are Satisfied ....................................................9

        1.  Lead Plaintiff and Lead Counsel Have Adequately Represented the
Class ...................................................................................................9

        2.  The Proposed Settlement Is the Result of Good Faith, Arm's-
Length Negotiations .........................................................................9

        3.  The Relief Provided by the Settlement Is Adequate When Weighed
Against the Risks of Litigation .....................................................10

        4.  The Proposed Method for Distributing Relief Is Effective .......................12

        5.  Lead Counsel's Fee and Expense Request Is Fair and Reasonable ..........13

        6.  All Class Members Are Treated Equitably Relative to One Another ........14

    B.  The Proposed Settlement Meets the *Grinnell* Factors ...........................................14

VI.  NOTICE TO THE CLASS SHOULD BE APPROVED ....................................................16

VII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...............................................18

VIII.  CONCLUSION ............................................................................................................18

4810-6655-6133.v1

**TABLE OF AUTHORITIES**

## CASES

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
    (S.D.N.Y. Oct. 16, 2019) ......................................................................................................15

*City of Providence v. Aeropostale, Inc*.,
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
    (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) .............................................................................................10

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................................................9, 15

*Deangelis v. Corzine*,
    151 F. Supp. 3d 356 (S.D.N.Y. 2015)......................................................................................7

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................................................8, 14, 15

*Dover v. British Airways, PLC (UK)*,
    No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513
    (E.D.N.Y. Oct. 9, 2018) ...........................................................................................................7

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987)........................................................................................16

*In re BHP Billiton Ltd. Sec. Litig.*,
    No. 1:16-cv-01445-NRB, 2019 WL 1577313
    (S.D.N.Y. Apr. 10, 2019),
    *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*,
    806 F. App'x 17 (2d Cir. 2020) .............................................................................................13

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................................10

*In re Deutsche Telekom AG Sec. Litig.*,
    No. 00-CV-9475 (NRB), 2005 WL 7984326
    (S.D.N.Y. June 14, 2005).......................................................................................................13

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................8, 15, 16

4810-6655-6133.v1

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689(SAS), 2003 WL 22244676
    (S.D.N.Y. Sept. 29, 2003) ...........................................................................16

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) .......................................................................9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................6

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514
    (E.D.N.Y. Oct. 23, 2012) ..............................................................................16

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2008 WL 5110904
    (S.D.N.Y. Nov. 20, 2008) .............................................................................17

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
    No. 08-cv-03601-HB-FM, 2013 WL 11330936
    (S.D.N.Y. Dec. 18, 2013) .............................................................................13

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...........................................................................16

*Pantelyat v. Bank of Am., N.A.*,
    No. 16-cv-8964 (AJN), 2019 WL 402854
    (S.D.N.Y. Jan 31, 2019) ................................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .....................................................................6, 9, 17

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b) ...........................................................................................................3, 4
    §78t(a) ...............................................................................................................3

28 U.S.C.
    §1715 ...............................................................................................................17

Federal Rules of Civil Procedure
Rule 23 ..................................................................................................3, 17
Rule 23(c)(a) ................................................................................................15
Rule 23(e) ..................................................................................................6, 8
Rule 23(e)(1) ..............................................................................................1, 7
Rule 23(e)(1)(B) ..............................................................................................7
Rule 23(e)(2) ............................................................................................7, 8, 9
Rule 23(e)(2)(C)(i) ..................................................................................14, 15
Rule 23(e)(2)(D) ............................................................................................14
Rule 23(e)(3) ..................................................................................................8

17 C.F.R.
§229.404 ........................................................................................................1
§240.10b-5 .....................................................................................................3
§240.10b-5-1 ................................................................................................11

## SECONDARY AUTHORITIES

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021)................................................................11

Class Representative The Plumbers and Pipefitters National Pension Fund ("Lead Plaintiff"), on behalf of a certified Class[1] of similarly situated investors, respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed $95 million Settlement[2] between Lead Plaintiff, on behalf of itself and the Class, and Defendants Tableau Software, Inc. ("Tableau" or the "Company"), Christian Chabot, Thomas Walker, Patrick Hanrahan and Christopher Stolte (collectively "Defendants" and together with Lead Plaintiff, the "Parties"); (ii) approval of the form and manner of the notice to be provided to the Class; and (iii) the scheduling of a hearing (the "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and litigation expenses, and deadlines related thereto. The Parties' agreed-upon proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") is filed herewith.

## I. PRELIMINARY STATEMENT

The Parties have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Litigation for $95 million in cash. This resolution, which represents a substantial recovery that falls well within the range of possible

---

[1] On January 16, 2020, the Court certified the following Class:

All persons and entities that purchased or otherwise acquired shares of Tableau Software, Inc.'s Class A common stock between February 5, 2015 and February 4, 2016, inclusive, and were damaged thereby. Excluded from the Class are Defendants, present or former executive officers of Tableau, and their immediate family members (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)).

ECF No. 134.

[2] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation. All emphasis is added and all citations are omitted unless otherwise noted.

- 1 -

4810-6655-6133.v1

approval, involved nearly four years of hard-fought litigation, including a motion to dismiss Lead Plaintiff's detailed and lengthy amended complaint; production and review of hundreds of thousands of pages of documents from Defendants and numerous nonparties; more than 25 depositions of fact and expert witnesses; a contested motion for class certification; and two formal mediation sessions with experienced mediators. The terms of the Settlement are set forth in the Stipulation of Settlement ("Stipulation"), filed simultaneously herewith.

Lead Plaintiff and Lead Counsel approve of the Settlement. Lead Plaintiff is an institutional investor that actively oversaw the Litigation and authorized the Settlement. Lead Counsel has substantial securities litigation experience and is recognized as a leader in the field. Based upon their experience and evaluation of the facts and the applicable law, Lead Counsel and Lead Plaintiff submit that the proposed Settlement is fair, reasonable, adequate and in the best interests of the Class. This is especially so in light of the risk that the Class might recover substantially less (or nothing) if the action were litigated through summary judgment, trial and the likely post-trial motions and appeals that would follow (a process that could last several years). Indeed, Lead Plaintiff faced risks with regard to establishing liability and damages, including the risk that Defendants' forthcoming motions for summary judgment or to exclude Lead Plaintiff's experts would be granted in whole or in part. Given these and other risks inherent in this complex securities class action, and the Settlement's substantial value, the Settlement represents an excellent result for the Class.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Class should be notified of the proposed Settlement. In light of the substantial recovery obtained, and the risks and expenses posed by summary judgment and trial, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and

enter the Preliminary Approval Order, which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice of Proposed Settlement of Class Action (the "Notice") and Summary Notice of Proposed Settlement of Class Action (the "Summary Notice") attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order; (iii) find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iv) set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.    HISTORY OF THE LITIGATION

In July 2017, a number of putative class actions were filed in this Court on behalf of purchasers of Tableau Class A common stock alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and United States Securities and Exchange Commission Rule 10b-5.[3]  On October 18, 2017, the Court: (1) appointed The Plumbers and Pipefitters National Pension Fund as Lead Plaintiff; and (2) approved Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.  ECF No. 27.

Lead Plaintiff's Second Amended Complaint filed on February 2, 2018 (ECF No. 45) (the "Amended Complaint") alleges that Defendants violated §§10(b) and 20(a) of the Exchange Act

---

[3]    On August 2, 2017, a similar complaint was filed in the United States District Court for the Western District of Washington.  That complaint was voluntarily dismissed on October 18, 2017.

4810-6655-6133.v1

during the Class Period by making materially false and misleading statements and/or failing to

disclose adverse information regarding the Company's business and operations, including that

product launches and upgrades by major software competitors were negatively impacting Tableau's

competitive position and profitability. Lead Plaintiff alleges that as a result of Defendants' false

statements and/or omissions, Tableau Class A common stock traded at artificially inflated prices, and

that when the true facts regarding the effect of competition on Tableau's growth and outlook were

revealed, the price of the Company's stock dropped, causing damage to members of the Class.

Defendants deny all of Lead Plaintiff's allegations. They contend that they did not violate

§§10(b) or 20(a) of the Exchange Act. Specifically, Defendants deny, *inter alia*, that they made any

allegedly false or misleading statements, that any of the allegedly false and misleading statements

were made with scienter, and that the Class Members, including Lead Plaintiff, suffered any

damages whatsoever.

The Parties have litigated motions to dismiss, a motion for class certification, and discovery

issues. They have also concluded extensive fact, class certification, and expert discovery, including

depositions, the production and review of hundreds of thousands of documents, and the exchange of

affirmative and rebuttal expert reports.[4]

## III.  SETTLEMENT NEGOTIATIONS

On March 30, 2020, the Parties engaged in a confidential mediation session before former

Ambassador Jeff Bleich, Esq., an experienced mediator. In advance of that mediation, the Parties

provided to Ambassador Bleich (and exchanged) detailed mediation statements, along with

---

[4]    In May 2020, the Court granted Lead Plaintiff's Unopposed Motion to Approve the Form and Manner of Class Notice (ECF No. 144), and notice was thereafter provided to over 59,000 potential Class Members and nominees. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, Internet Advertising, and Requests for Exclusion Received to Date. (ECF No. 146). Only three valid requests for exclusion from the Class were submitted. *Id.* at ¶16.

supporting evidence. The Parties engaged in good faith negotiations, but did not reach a settlement, and the Litigation continued. On March 10, 2021, the Parties resumed participation in a confidential mediation session with the Hon. Layn R. Phillips (Ret.), another experienced mediator. The mediation was again preceded by the submission and exchange of mediation materials. The Parties engaged in arm's-length negotiations during the mediation and reached an agreement in principle to resolve the case for $95 million. A confidential Term Sheet memorializing their agreement was executed on March 18, 2021.

In light of the substantial benefit to the Class, and the significant costs and risks of further litigation – and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by well-respected mediators – Lead Plaintiff respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Class.

## IV. SETTLEMENT TERMS

The Settlement provides that Defendants will pay or cause to be paid $95 million into the Escrow Account, which amount plus accrued interest comprises the Settlement Fund. Stipulation, ¶2.2. Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. *Id.*, ¶2.9. Lead Plaintiff proposes that a nationally recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), be retained here subject to the Court's approval. *Id.*, ¶¶1.4, 5.1.[5]

The Notice provides that Lead Counsel will submit an application with its opening papers, in support of final approval of the Settlement, for an award of attorneys' fees for all Lead Plaintiff's

---

[5] Gilardi was previously approved by the Court and disseminated the Notice of Pendency of Class Action to Class Members in June, 2020. ECF No. 144.

Counsel in an amount not to exceed 28% of the Settlement Amount, and litigation expenses in an amount not to exceed $1,500,000.00, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund. The Notice explains that such fees and expenses shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10. Any amount remaining following the distribution as a result of uncashed or returned checks shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Class Members equitably based on the timing of their Tableau Class A common stock purchases, acquisitions and sales. The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

The proposed Settlement is a very good recovery on the claims asserted in this Litigation and is in all respects fair, adequate, reasonable, and in the best interests of the Class.

## V. PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes

of settlement . . . may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. *See Deangelis v. Corzine*, 151 F. Supp. 3d 356, 357 (S.D.N.Y. 2015). In the first stage, a court provides preliminary approval of the settlement and authorizes notice of the settlement be given to the class. *Id.* at 357. That is what Lead Plaintiff seeks via this motion. In the second stage, which will only come if the Court grants this motion, "the court holds a fairness hearing to 'determine whether the settlement's terms are fair, adequate, and reasonable.'" *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at *8 (E.D.N.Y. Oct. 9, 2018).

Pursuant to recently amended Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

A.     the class representatives and class counsel have adequately represented the class;

B.     the proposal was negotiated at arm's length;

C.     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)     the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3);[6] and

D.    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors

identified by the Second Circuit that district courts should consider in deciding whether to grant final

approval:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and] (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The Rule 23(e) factors are not intended

to "displace" any previously adopted factors but "rather to focus the court and the lawyers on the

core concerns of procedure and substance that should guide the decision whether to approve the

proposal."  Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil

Procedure.  Likewise, "[i]n finding that a settlement is fair, not every factor must weigh in favor of

settlement, 'rather the court should consider the totality of these factors in light of the particular

circumstances.'"  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement

approval process and grant preliminary approval of the proposed Settlement.  As stated above, the

proposed Settlement provides a Fund of $95 million in cash, a substantial recovery that is

---

[6]    There are no such agreements here.

unquestionably beneficial to the Class and plainly "within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### A.     The Rule 23(e)(2) Factors Are Satisfied

#### 1.     Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

As the Court found in granting class certification, ECF No. 134, Lead Plaintiff's interests in this case are directly aligned with those of the other Class Members.   Lead Plaintiff has demonstrated its ability and willingness to pursue the Litigation on the Class' behalf through its active involvement in the Litigation, including by searching for and producing documents, by sitting for a deposition, by reviewing numerous filings, and in approving the Settlement.  Lead Plaintiff and its counsel zealously advocated for the interests of Tableau stock purchasers and have obtained an excellent result.   Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, and discovery issues; and participation in extensive, arm's-length mediations.  The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of Tableau stock purchasers.  Accordingly, this factor weighs in favor of approval.

#### 2.     The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See Wal-Mart*, 396 F.3d at 116.  As described above, the Settlement was reached only after extensive, arm's-length negotiations before the Ambassador Jeff Bleich and the Hon. Layn R. Phillips (Ret.), nationally recognized mediators experienced in securities class actions.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating

that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) ("[T]he Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent and highly skilled mediators of complex actions."). After good faith back-and-forth negotiations at two Zoom mediation sessions, including the exchange of evidentiary submissions, the Parties reached an agreement-in-principle to settle the Litigation.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Lead Plaintiff agreed to settle after fact and expert discovery was completed. The Parties' dispositive motions were scheduled to be filed but discovery issues arose, delaying the filing of those motions. In the event the Court did not dispose of the case at summary judgment, trial was the only remaining stage of the Litigation. Lead Plaintiff and Lead Counsel therefore had an adequate basis for assessing the strength of the Class' claims and Defendants' defenses when they agreed to the Settlement. These circumstances confirm the presumption of fairness of the proposed Settlement.

### 3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

In assessing a settlement, courts consider the range of reasonableness in light of both the best possible recovery and litigation risks, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court thus need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

- 10 -

costs necessarily inherent in taking any litigation to completion.'" *Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *7 (S.D.N.Y. Jan 31, 2019).

If approved, the Settlement will provide Class Members with $95 million in cash less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, Taxes and Tax Expenses. The amount obtained for the Class represents a very good result for the Class, representing at least 11% of maximum estimated recoverable damages, which far exceeds the median and average recovery in PSLRA cases. *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) ("The average settlement value in 2020 was $44 million for non-merger objection cases with settlements of more than $0 to the class" (15, Fig. 13) and the median ratio of settlements to investor losses in 2020 was 1.7% (20, Fig. 16)).

Additionally, although Lead Plaintiff and Lead Counsel believe their case against Defendants is strong, they acknowledge that Defendants have put forth substantial arguments concerning falsity, scienter, loss causation, and damages. For example, Defendants argued that Lead Plaintiff could not establish the material falsity of the alleged misstatements because Defendants' statements concerning the Company's competitive landscape were opinions not subject to objectively verifiable facts, and the statements were not contradicted by the quantifiable data they had available to them at the time of each challenged statement. Defendants argued that for opinion statements, scienter requires proof (which was absent here) that the speaker did not actually hold the stated opinion or that the basis of the held opinions were withheld with either an intent to deceive or severe recklessness. They also maintained that Defendants' stock sales were not "unusual" or "suspicious" in any way because they mostly took place pursuant to Rule 10b-5-1 trading plans. Finally, Defendants maintained that any "corrective disclosure" on February 5, 2016 did not reveal anything

4810-6655-6133.v1

that Defendants knowingly concealed in the challenged statements. Defendants also argued that the Class Period should be materially shortened to perhaps as short as three months. If any of these arguments were to be accepted by the Court or a jury, any potential recovery could be eliminated or dramatically reduced. Further, to secure a recovery absent a settlement, Lead Plaintiff would have to prevail against Defendants at summary judgment and at trial; and even if Lead Plaintiff prevailed at each of those stages, it would also have to prevail on the appeals that would likely follow.

The proposed Settlement balances the risks, costs and delays inherent in complex securities class action cases such as this one. When viewed in the context of these risks and the uncertainty of any later recovery from Defendants, the Settlement is extremely beneficial to the Class.

### 4. The Proposed Method for Distributing Relief Is Effective

The method of the proposed notice and claims administration process is effective. Specifically, this includes well-established, effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund. The notice plan includes direct-mail Notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service. Also, the settlement-specific website which was created for the Notice of Pendency will be updated and key documents will be posted, including the Stipulation, Notice, Proof of Claim and Release form, Preliminary Approval Order and all briefs and declarations in support of the Settlement and an award of fees and expenses.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the

assistance of Lead Plaintiff's damages expert and is based primarily on the expert's damages analysis estimating the amount of alleged artificial inflation in the price of Tableau Class A common stock during the Class Period.

Finally, Gilardi, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of its claims, and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.

### 5.  Lead Counsel's Fee and Expense Request Is Fair and Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees on behalf of all Lead Plaintiff's Counsel of up to 28% of the Settlement Amount plus litigation expenses incurred in connection with the prosecution and resolution of this Litigation in an amount not to exceed $1,500,000.00, plus interest earned on both amounts.  This request is reasonable and within the range of fee awards in this District.  *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million settlement plus expenses), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 17 (2d Cir. 2020); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding fees of 33-1/3% of $85 million recovery plus expenses); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 28% of $120 million settlement).[7]

---

[7]  A motion for final approval of the Settlement, including a motion for attorneys' fees and expenses, will be filed thirty-five (35) calendar days before the Settlement Hearing; and Lead Counsel will request that any fees awarded will be paid when the Court executes the Judgment and an order awarding such fees and expenses following final approval of the Settlement.

4810-6655-6133.v1

### 6.    All Class Members Are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.  Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution pursuant to the Plan of Allocation.  Lead Plaintiff, like all other Class Members, will be subject to the same formulas for distribution of the Settlement.

### B.    The Proposed Settlement Meets the *Grinnell* Factors

***The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement***.  The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above.  Fed. R. Civ. P. 23(e)(2)(C)(i).  In addition, this case is a testament to the complexity, expense and duration of securities class actions. The Parties advanced numerous complex legal and factual issues under the federal securities laws, especially with respect to falsity, scienter, loss causation and damages.

***The Reaction of the Class to the Settlement***.  Lead Plaintiff has participated throughout the prosecution of the case, including by producing documents, sitting for a deposition and reviewing numerous filings, and was actively involved in the decision to enter into the Settlement.  This factor is otherwise inapplicable as notice regarding the Settlement has not yet been mailed or otherwise distributed to Class Members.

***The Stage of the Proceedings***.  The volume and substance of Lead Plaintiff's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement, as discussed above in §II.  The voluminous discovery record of

over 650,000 documents and more than 30 depositions, and evidentiary submissions during mediation permitted Lead Plaintiff and Lead Counsel to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. *See Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). This factor strongly supports preliminary approval of the Settlement.

**The Risk of Establishing Liability and Damages**. The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal"). For the same reasons explained above that Lead Plaintiff has satisfied the Rule 23(e)(2)(C)(i) factor, Lead Plaintiff has satisfied the fourth *Grinnell* factor. *See* §V.A.3 above.

**The Risks of Maintaining the Class Action Through Trial**. Although the Class was certified in January 2020, the Second Circuit and Supreme Court routinely refine the law concerning class certification in securities cases, and the Court could have revisited certification at any time. *See* Fed. R. Civ. P. 23(c)(a) (authorizing a court to decertify a class at any time); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"). This presents a continuous risk that the case might not be maintained on a class-wide basis through trial. Thus, this factor weighs in favor of preliminary approval of the Settlement.

**Defendant's Ability to Withstand a Greater Judgment**. A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors. *See D'Amato*, 236 F.3d at 86. While Defendants here likely could withstand a judgment in excess of $95 million, courts generally do not find the ability of

a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement. In fact, the ability of defendant to pay more money does not render a settlement unreasonable. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).

**The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed). Here, the Settlement recovers at least 11% of Lead Plaintiff's estimate of maximum recoverable damages, which far exceeds the median and average recovery in PSLRA cases. *See* §V.A.3. The $95 million cash settlement is an excellent recovery for the Class. This factor supports preliminary approval.

## VI.    NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of proposed Preliminary Approval Order, and described above, Lead Plaintiff will notify Members of the Class by mailing the Notice and Proof of Claim and

- 16 -

Release to all Members of the Class who can be identified with reasonable effort, using multiple sources of data, including: (i) those Class Members who received the Notice of Pendency; and (ii) a proprietary list maintained by the Claims Administrator of the largest and most common U.S. banks, brokers and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Notice will advise the Members of the Class of: (i) the essential terms of the Settlement; and (ii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses. The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for submitting valid and timely Proofs of Claim and Release pursuant to the proposed Plan of Allocation, and objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses.

In addition to mailing the Notice and Proof of Claim and Release, the Claims Administrator will cause publication of a Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service. Defendants have also agreed to serve notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. §1715, and will do so within ten days of the filing of the Stipulation with the Court.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA. In short, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which includes individual notice by mail to all Members of the Class who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VII. PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff proposes the following schedule for the Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim and Release to the Class (which date shall be the "Notice Date") | 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing |
| Deadline for receipt of objections | 21 calendar days prior to Settlement Hearing |
| Settlement Hearing | On or after 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Proofs of Claim and Release | 90 calendar days after the Notice Date |

## VIII. CONCLUSION

Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice given to the Class; and (iii) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and expenses. The Parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is filed herewith.

DATED:  April 16, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
WILLIAM J. GEDDISH


/s/ DAVID A. ROSENFELD
DAVID A. ROSENFELD

4810-6655-6133.v1

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
wgeddish@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DOUGLAS R. BRITTON (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dougb@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LABATON SUCHAROW LLP
JONATHAN GARDNER
CHRISTINE M. FOX
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com

Additional Counsel for Lead Plaintiff

4810-6655-6133.v1

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Individual Practices of Judge John G. Koetl, dated May 28, 2020, the undersigned certifies that Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for (I) Preliminary Approval of Class Action Settlement; and (II) Approval of Notice to the Class complies with all formatting rules and contains 5,661 words, excluding the cover page, this certification of compliance, table of contents, table of authorities, and counsels' signature blocks.

 

/s/ DAVID A. ROSENFELD
_____
DAVID A. ROSENFELD

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on April 16, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to received such notice. I further certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed April 16, 2021, at Melville, New York.

/s/ DAVID A. ROSENFELD

DAVID A. ROSENFELD