UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————— x

CARRIE SCHEUFELE, JEFFREY
SCHEUFELE and NICHOLAS ORAM,
Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiffs,

      vs.

TABLEAU SOFTWARE, INC., CHRISTIAN
CHABOT, THOMAS WALKER, PATRICK
HANRAHAN and CHRISTOPHER STOLTE,

                 Defendants.

—————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:17-cv-05753-JGK

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN
OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................................3

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTS...............................................................................................................3

    A.  The Law Favors and Encourages Settlements ..........................................................3

    B.  The Settlement Must Be Procedurally and Substantively Fair, Reasonable,
and Adequate .................................................................................................................4

    C.  The Proposed Settlement Is Procedurally and Substantively Fair,
Reasonable, and Adequate ...........................................................................................6

        1.  The Settlement Satisfies the Requirements of Rule 23(e)(2)......................6

        2.  The Settlement Satisfies the Remaining *Grinnell* Factors .........................13

IV.  THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ......................................17

V.  NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23
AND DUE PROCESS .....................................................................................................18

VI.  CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07 Civ. 2207(JGK), 2010 WL 3119374
  (S.D.N.Y. Aug. 6, 2010) ...............................................................................................8, 10, 13

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-CV-10211(LTS)(HP), 2011 WL 2208614
  (S.D.N.Y. June 7, 2011).........................................................................................................15

*Charron v. Pinnacle Grp. N.Y. LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012),
  *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241
  (2d. Cir. 2013)..........................................................................................................................8

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534
  (S.D.N.Y. Oct. 16, 2019) ............................................................................................. *passim*

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) .......................................................................................13, 15

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)........................................................................................................6

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)........................................................................................................7

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................................... *passim*

*Dornberger v. Metro Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ...........................................................................................20

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................................10

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071(RJH), 2005 WL 2757792
  (S.D.N.Y. Oct. 24, 2005) .......................................................................................................11

**Page**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................4, 7, 10, 17

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) ...................................................................16

*In re AOL Time Warner Inc. Sec. & ERISA Litig.*,
  No. 02 Civ. 5575(SWK), 2006 WL 903236
  (S.D.N.Y. Apr. 6, 2006) ...........................................................................................8

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..........................................................14, 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices
  & Prods. Liability Litig.*,
  No. 17-md-02777-EMC, 2019 WL 2554232
  (N.D. Cal. May 3, 2019) ...........................................................................................6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018),
  *aff'd*, 822 F. App'x 40 (2d Cir. 2020) ............................................... *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400(CM)(PED), 2010 WL 4537550
  (S.D.N.Y. Nov. 8, 2010) ...........................................................................................8

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................... *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417
  (S.D.N.Y. Dec. 19, 2014) ........................................................................................14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
  (S.D.N.Y. Sept. 25, 2003) ........................................................................................9

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................19

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15 Civ. 7488 (CM), 2020 WL 2749223
  (S.D.N.Y. May 27, 2020) ...........................................................................................5

- iii -

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................5, 6

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 Civ. 5173(RPP), 2008 WL 1956267
   (S.D.N.Y. May 1, 2008) ...........................................................................16

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................10

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115809
   (S.D.N.Y. Nov. 7, 2007) .....................................................................13, 18

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................17

*Martignago v. Merrill Lynch & Co., Inc.*,
   No. 11-cv-03923-PGG, 2013 WL 12316358
   (S.D.N.Y. Oct. 3,2013) ...........................................................................14

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713(PGG), 2010 WL 2399328
   (S.D.N.Y. Mar. 3, 2010) ................................................................3, 7, 8, 15

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).....................................................................16

*Padro v. Astrue*,
   No. 11-CV-1788(CBA)(RLM), 2013 WL 5719076
   (E.D.N.Y. Oct. 18, 2013) .........................................................................20

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ............................................................12

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2019 WL 2103379
   (N.D. Ill. May 14, 2019) ...........................................................................6

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................10

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ...............................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................. *passim*

Page

*Yuzary v. HSBC Bank, USA, N.A.*,
   No. 12 Civ. 3693(PGG), 2013 WL 5492998
   (S.D.N.Y. Oct. 2, 2013) .................................................................................5, 14

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ...........................................................................................................18
   Rule 23(c) .......................................................................................................15
   Rule 23(c)(2)(B) .......................................................................................18, 20
   Rule 23(e) ................................................................................................ *passim*
   Rule 23(e)(1)(B) .............................................................................................18
   Rule 23(e)(2) ........................................................................................... *passim*
   Rule 23(e)(2)(A) ...............................................................................................7
   Rule 23(e)(2)(B) ...............................................................................................7
   Rule 23(e)(2)(C)(i) .......................................................................................8, 11
   Rule 23(e)(2)(C)(ii) .........................................................................................11
   Rule 23(e)(2)(C)(iii) ........................................................................................12
   Rule 23(e)(2)(C)(iv) ........................................................................................12
   Rule 23(e)(2)(D) ..............................................................................................13
   Rule 23(e)(3) ...............................................................................................5, 12

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:*
   *2020 Full-Year Review* (NERA Jan. 25, 2021) .......................................................16

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, United Association National

Pension Fund (f/k/a/ The Plumbers and Pipefitters National Pension Fund) ("Plaintiff" or the "Fund"

or "Class Representative"), on behalf of itself and the Class, respectfully submits this memorandum

of law in support of its motion for final approval of the $95,000,000 Settlement (the "Settlement

Amount") reached in this action (the "Litigation") and approval of the Plan of Allocation (the

"Plan").  The terms of the Settlement are set forth in the Stipulation of Settlement dated April 16,

2021 (ECF No. 173) (the "Stipulation").[1]  The Court preliminarily approved the Settlement on May

7, 2021 (ECF No. 177) (the "Preliminary Approval Order").

## I.   INTRODUCTION

Plaintiff's $95 million recovery is the result of its rigorous multi-year effort to prosecute this

highly contested litigation, reached after arm's-length settlement negotiations by experienced and

knowledgeable counsel, overseen by nationally recognized mediators.  The Settlement represents an

excellent result for the Class and easily satisfies each of the Rule 23(e)(2) factors, as well as the

factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.

1974).

The Settlement is especially beneficial to the Class in light of the substantial litigation risks

Plaintiff faced.  The gravamen of Plaintiff's claims was that, during the Class Period, Defendant

Tableau Software, Inc. ("Tableau" or the "Company") made materially false and misleading public

statements regarding the Company's business and operations and omitted that project launches and

---

[1]     All capitalized terms not otherwise defined herein shall have the meanings set forth in the
Stipulation, the accompanying Declaration of David A. Rosenfeld in Support of Motions for: (1)
Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of
Attorneys' Fees and Expenses ("Rosenfeld Decl."), and in the Memorandum of Law in Support of
Class Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Fee Memorandum"),
submitted concurrently herewith.  Citations are omitted and emphasis is added throughout, unless
otherwise noted.

upgrades by major software competitors were negatively impacting Tableau's competitive position and growth, which caused Tableau stock to trade at artificially inflated prices. Plaintiff further alleged that when the facts concerning the effect of competition on Tableau's growth and outlook were revealed, the price of Tableau stock declined, causing damages to Plaintiff and the Class. Rosenfeld Decl., ¶6. While Plaintiff believes in the merit of its claims, Defendants had strong and credible arguments that Plaintiff: (i) could not prove falsity because the statements at issue were primarily non-actionable opinions that could not be shown to be verifiably false or misleading and that the statements to the market were consistent with internal data; (ii) could not prove scienter because Defendants reasonably believed that their statements to investors were consistent with the internal data available to them, and that their trades in Tableau stock pursuant to Rule 10b5-1 trading plans were neither unusual or suspicious, and were properly and consistently made, both prior to and during the Class Period; and (iii) could not prove loss causation and damages because Plaintiff's alleged "corrective disclosure" on February 4, 2016 did not reveal any information Plaintiff contended was concealed by Defendants and because Plaintiff could not disaggregate non-fraud related factors from the declines in Tableau's stock price. *Id.* at ¶¶89-92. Had Plaintiff failed to establish any one of the elements of its claim, the entire case would be lost. Defendants also challenged Plaintiff's expert's methodology for establishing damages at trial. *Id.* at ¶92.

As detailed in the Rosenfeld Declaration, Plaintiff and Class Counsel unquestionably had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had conducted an extensive investigation into the merits of the claims, including undertaking comprehensive fact and expert document and deposition discovery, and participating in formal mediation. Based on the results of this work, Plaintiff knew that Defendants' forthcoming motion for summary judgment might have succeeded, resulting in no recovery at all. Moreover, two skilled

and highly reputable mediators – former Ambassador Jeffrey Bleich, Esq. and retired federal district court judge Layn R. Phillips – assisted the parties in reaching a resolution of the case for $95 million.

Given the risks to proceeding and the excellent recovery obtained, Plaintiff respectfully submits that the $95 million Settlement and the Plan of Allocation – which was prepared with the assistance of Class Counsel's damages expert, and is substantially similar to numerous other such plans that have been approved in this Circuit – are fair and reasonable in all respects. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiff respectfully refers the Court to the accompanying Rosenfeld Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the exhaustive efforts undertaken by Plaintiff and Class Counsel during the course of the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    The Law Favors and Encourages Settlements

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The court may approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The evaluation of a proposed settlement requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Id.* "Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng*

- 3 -

*Catering & Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010)

(citing *Wal-Mart Stores*, 396 F.3d at 116); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*,

298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and

other complex cases where substantial resources can be conserved by avoiding the time, cost, and

rigor of prolonged litigation.").  Thus, the Second Circuit has instructed that, while a court should

not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and

thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d

at 462.

        As set forth below, the $95 million Settlement here, particularly in light of the significant

litigation risks Plaintiff faced, and the recovery relative to maximum recoverable damages, is

manifestly reasonable, fair, and adequate under all of the pertinent factors courts use to evaluate a

settlement.  Accordingly, the Settlement warrants final approval from this Court.

> **B.     The Settlement Must Be Procedurally and Substantively Fair,
>          Reasonable, and Adequate**

        Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement.

Rule 23(e)(2), as amended, provides that courts should consider certain factors when determining

whether a class action settlement is "fair, reasonable, and adequate" such that final approval is

warranted:

> (A)     the class representatives and class counsel have adequately represented the
>         class;
>
> (B)     the proposal was negotiated at arm's length;
>
> (C)     the relief provided for the class is adequate, taking into account:
>
>> (i)     the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the
>>         class, including the method of processing class-member claims;

   (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and

   (iv)  any agreement required to be identified under Rule 23(e)(3); and

 (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

   In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis").  *See also In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2020 WL 2749223, at *2-*3 (S.D.N.Y. May 27, 2020).

   For a settlement to be deemed substantively and procedurally fair, reasonable and adequate, not every factor need be satisfied.  "'[R]ather, the court should consider the totality of these factors in light of the particular circumstances.'"  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).  Additionally, "'[a]bsent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement.'"  *Yuzary v. HSBC*

- 5 -

*Bank, USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013); *see also Glob. Crossing*, 225 F.R.D. at 455 (courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching'").

Under the recently amended Rule 23(e)(2), courts now "must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the [Rule 23(e)(2)] factors weigh in favor of final settlement approval." *Payment Card Interchange*, 330 F.R.D. at 28. The Preliminary Approval Order made such findings. *See* Preliminary Approval Order at ¶2 (ECF No. 177). Courts have noted that a plaintiff's satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

## C. The Proposed Settlement Is Procedurally and Substantively Fair, Reasonable, and Adequate

### 1. The Settlement Satisfies the Requirements of Rule 23(e)(2)

#### a. Plaintiff and Class Counsel Have Adequately Represented the Class

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Plaintiff's interests are not antagonistic

to, and in fact are directly aligned with, the interests of other Members of the Class. Additionally, Plaintiff and Class Counsel have adequately represented the Class by zealously prosecuting this action through fact and expert discovery, and participating in two mediation sessions with Defendants. *See generally* Rosenfeld Decl. Through each step of the Litigation, Plaintiff and Class Counsel have strenuously advocated for the best interests of the Class. Plaintiff and Class Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

### b.   The Proposed Settlement Was Negotiated at Arm's Length Before Experienced Mediators

The Settlement satisfies Rule 23(e)(2)(B) because it is the product of arm's-length negotiations between the parties' counsel before neutral mediators, with no hint of collusion. Rosenfeld Decl., ¶¶76-78. Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *McMahon*, 2010 WL 2399328, at *4 ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.") (citing *Wal-Mart Stores*, 396 F.3d at 116); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Moreover, the Settlement negotiations in this case were "carried out under the direction of Lead Plaintiff[], . . . whose involvement suggests procedural fairness." *Facebook*, 343 F. Supp. 3d at 409.

It is well-settled in this Circuit that "a class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel." *Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also*

- 7 -

*Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at *4 (settlement was "procedurally fair, reasonable, adequate and not a product of collusion" where it was reached after "arm's-length negotiations between the parties").  Accordingly, this factor weighs heavily in favor of the Court granting final approval of the Settlement.

### c. The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* Factors overlap, as they address the substantive fairness of the Settlement in light of the risks posed by continuing litigation.  As set forth below, these factors weigh in favor of final approval.

### (1) The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *Glob. Crossing*, 225 F.R.D. at 459.  As a preliminary matter, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval.  Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts, including [courts in this District], have long recognized that such litigation is notably difficult and notoriously uncertain.'"  *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400(CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation.").  *See also Bellifemine v. Sanofi-Aventis U.S. LLC*,

- 8 -

No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("The complexity of the case weights in favor of approving the proposed settlement").  Although Plaintiff and Class Counsel firmly believe that the claims asserted in the Litigation are meritorious, and that they would prevail at trial, further litigation against Defendants posed risks that made any recovery uncertain.

Defendants have vigorously contested their liability and have denied and continue to deny each and every claim and allegation of wrongdoing.  Specifically, Defendants have argued that Plaintiff could not establish that any of the alleged misstatements were false or that any defendant made any allegedly false or misleading statement with the requisite intent.  Rosenfeld Decl., ¶¶89-90.  In light of the difficulty of proving falsity and scienter at trial (*see In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11 (S.D.N.Y. Sept. 25, 2003) (noting difficulty in proving scienter)), Plaintiff knew it faced a substantial risk that the Court could grant Defendants' upcoming motion for summary judgment, leaving Plaintiff with no recovery at all.

### (2)   The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing liability apply with equal force to establishing damages.  Here, Defendants argued that Plaintiff could not prove loss causation with respect to the alleged misrepresentations.  Rosenfeld Decl., ¶¶91-92.  Specifically, Defendants maintained that Plaintiff's alleged "corrective disclosure" on February 4, 2016 did not reveal any of the information alleged to have been concealed by Defendants.  *Id.* at ¶91.  Defendants argued that because the corrective information was specific to Tableau's fourth quarter 2015 results, it could not be corrective of alleged false and misleading statements made at the start of the Class Period, in early 2015.  *Id.* Defendants also argued that Plaintiff could not disaggregate non-fraud-related factors from the declines in Tableau's stock price, and that the methodology that Plaintiff's expert utilized to prove

- 9 -

damages was unreliable and should be excluded.  Plaintiff bears the burden of establishing loss causation.  *See, e.g.*, *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005).  Resolving disputed issues regarding damages and loss causation would require expert testimony, and Defendants' experts had opined that Plaintiff could not prove that the Class was damaged.  Courts recognize a substantial litigation risk from uncertainty as to which expert's view will be credited by a jury.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in this "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found"); *Glob. Crossing*, 225 F.R.D. at 459 ("'[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.'").

Thus, in light of the very significant risks Plaintiff faced at the time of the Settlement with regard to establishing liability and damages at summary judgment and trial, this factor weighs heavily in favor of final approval.

### (3)   The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of the Litigation was considerable.  *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *Bellifemine*, 2010 WL 3119374, at *3.  This case has already been pending for over four years, and a partial reopening of discovery was necessary because of the late discovery of previously-unproduced documents.  Rosenfeld Decl., ¶¶52-55.  If not for the Settlement, the Court would have had to rule on the upcoming motions for summary judgment and *Daubert* challenges.  The preparation for what would likely be a multi-week trial would have caused the action to last for several more years before the Class could possibly receive any recovery.  Such a lengthy and highly uncertain process would not serve the best interests

- 10 -

of the Class compared to the immediate, certain monetary benefits of the Settlement. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* Factors, all weigh in favor of final approval of this $95 million settlement.

### d. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Plaintiff and Class Counsel have taken appropriate steps to ensure that the Class is notified about the Settlement. Pursuant to the Preliminary Approval Order (ECF No. 177), more than 78,800 copies of the Notice and Proof of Claim were mailed to potential Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶11-12, submitted herewith. Additionally, the Settlement-specific website that was created in 2020 in connection with the Notice of Pendency of Class Action has been updated to include key Settlement documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶14. Class Members have until August 24, 2021 to object to the Settlement. While that date has not yet passed, to date there have been no objections to the Settlement. Class Members also have until August 24, 2021 to submit claim forms. The claims process is similar to that typically used in

- 11 -

securities class action settlements.  *See Christine Asia*, 2019 WL 5257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective").  This factor therefore supports final approval.

### e.    Class Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  Consistent with the Notice, and as discussed in the Fee Memorandum, Class Counsel seeks an award of attorneys' fees on behalf of all Plaintiff's Counsel in the amount of 28% of the Settlement Amount, and expenses in the amount of $1,057,881.05, in addition to interest on both amounts, to be paid at the time of award.  As set forth in Class Counsel's Fee Memorandum, this request is in line with fee awards in this District in similar common-fund cases.[2]

Class Counsel's fee request is reasonable, was negotiated by Plaintiff after the Settlement was reached and Plaintiff has ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments.  Accordingly, this factor supports final approval of the Settlement.

### f.    The Parties Have No Other Agreements

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3).  There are none here.

---

[2]    The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Class Counsel when the Court executes the Judgment and an Order awarding such fees and expenses.  *See* Stipulation, ¶6.2; *see also Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (finding the "quick-pay provision" did "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

### g. The Settlement Ensures Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether class members are treated equitably. As discussed further below in §IV, Class Counsel developed the Plan in consultation with its damages expert to treat Class Members equitably relative to each other by: (i) taking into account the timing of their Tableau stock purchases, acquisitions, and sales; and (ii) providing that each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses. Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund as every other Class Member. This factor therefore merits granting final approval of the Settlement.

Based on the foregoing, Plaintiff and Class Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

### 2. The Settlement Satisfies the Remaining *Grinnell* Factors

### a. The Lack of Objections to Date Supports Final Approval

The reaction of the class to the settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "'absence of objections may itself be taken as evidencing the fairness of a settlement.'" *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Court has observed that "[a] favorable reception by the class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *Bellifemine*, 2010 WL 3119374, at *3.

While the deadline to submit objections has not yet passed, no objections have been received to date. This positive reaction of the Class supports approval of the Settlement. *See Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the class "demonstrates that the class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelming positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

### b.   Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* Factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *Martignago v. Merrill Lynch & Co., Inc.*, No. 11-cv-03923-PGG, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'"). "To satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that in cases brought under the PSLRA, discovery cannot commence until the motion to dismiss is denied); *see also Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

There can be no question that Plaintiff and Class Counsel had sufficient information to assess the adequacy of the Settlement. As detailed in the Rosenfeld Declaration, Plaintiff and Class Counsel negotiated the Settlement only after conducting an extensive factual investigation, which included the review of over two million pages of documents produced by Defendants and third parties, and the taking or defending of over two dozen depositions. The parties also briefed

- 14 -

Plaintiff's motion for class certification, retained experts, and conducted expert discovery.  *See generally* Rosenfeld Decl.  Plaintiff, through Fund counsel, also attended two mediation sessions with Defendants, overseen first by Ambassador Bleich and then Judge Phillips, which ultimately resulted in the Settlement.  *Id.*

Thus, by the time of the Settlement, Plaintiff was well-versed in the strengths and weaknesses of the case, and was in a position to realistically assess the proposed Settlement.  This factor weighs in favor of final approval.

### c.    Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Plaintiff's ability to maintain class-action status through trial presented a potential risk in this Litigation.  Although the Court certified the Class over Defendants' vigorous opposition, Defendants may have moved to decertify the class or trim the class period before trial or on appeal, as class certification may be reviewed at any stage of the litigation.  *See Christine Asia*, 2019 WL 5257534, at *13 (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time).   "The risk of maintaining class status throughout trial . . . weighs in favor of final approval." *McMahon*, 2010 WL 2399328, at *5.

### d.    Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval.  Even if Defendants could have withstood a greater judgment, however, a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'"  *Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211(LTS)(HP), 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the

- 15 -

settlement").  A "defendant is not required to 'empty its coffers' before a settlement can be found

adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP),

2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).  Here, though Defendants might be able to endure

a larger judgment, all other factors favor final approval.

**e.**   **The Settlement Amount Is Reasonable in View of the
Best Possible Recovery and the Risks of Litigation**

The adequacy of the amount offered in a settlement must be judged "not in comparison with

the possible recovery in the best of all possible worlds, but rather in light of strengths and

weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  A court need only determine whether the

settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact"

in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to

completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225

F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal

and practical obstacles to obtaining a large recovery").

Here, "[b]ecause [Plaintiff] face[s] serious challenges to establishing liability, consideration

of [Plaintiff's] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*,

343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* Factor is

"a function of both (1) the size of the amount relative to the best possible recovery; and (2) the

likelihood of non-recovery").  The Settlement represents a recovery of at least 11% of reasonably

recoverable damages, Rosenfeld Decl., ¶84, an amount that far exceeds the average recovery of 1.7%

in cases settled in 2020.  *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities*

- 16 -

*Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at 20, figure 16, attached hereto as Exhibit A.[3]

Moreover, the $95 million Settlement Amount "was agreed upon only after careful consideration, both by competent [l]ead [c]ounsel and by [a neutral mediator]" – concluding that the Settlement represented a very good recovery for the Class in light of the substantial litigation risks Plaintiff faced.  *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiffs' potential recovery," such a recovery is within "the range of reasonableness" where "the risks of a zero – or minimal – recovery scenario are real").  This factor weighs in favor of final approval.

In sum, the *Grinnell* Factors, and the Rule 23(e)(2) factors, individually and collectively, weigh strongly in favor of the Court's approval of the Settlement.

## IV.      THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan is the same as the standard for approving the Settlement as a whole: namely, "'it must be fair and adequate.'"  *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"  *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.

Here, the Plan was prepared with the assistance of Plaintiff's damages expert and has a rational basis, as it is based on the same methodology underlying Plaintiff's measure of damages: the amount of artificial inflation in the price of Tableau common stock during the Class Period.  *See*

---

[3]      Not surprisingly, Defendants estimated reasonable recoverable damages at a significantly lower amount.

*Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness"). This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that are approved for payment from the Net Settlement Fund under the Plan. Rosenfeld Decl., ¶¶97-98. The Plan treats all Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more. *See id.*; *see also* Murray Decl., Ex. A (Notice) at 5.

Plaintiff and Class Counsel believe that the Plan is fair and reasonable, and respectfully submit that it should be approved by the Court. Indeed, notably, there have been no objections to the Plan to date, which supports the Court's approval. *See Veeco*, 2007 WL 4115809, at *7.

## V.  NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014). Notice is

- 18 -

adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate the Notice to potential Class Members satisfy these standards. The Court-approved Notice and Proof of Claim (the "Notice Packet") amply inform Class Members of, among other things: (i) the pendency of the Litigation; (ii) the nature of the Litigation and the Class' claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan; (v) Class Members' rights to object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Class Members; and (vii) information regarding Class Counsel's motion for an award of attorneys' fees and expenses. The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; and (ii) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, Gilardi & Co. LLC ("Gilardi"), the Court-approved Claims Administrator, commenced the mailing of the Notice Packet by First-Class Mail to potential Class Members, brokers, and nominees on May 25, 2021. As of August 5, 2021, more than 78,800 copies of the Notice Packet have been mailed. Murray Decl., ¶11. Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire*.

*Id.*, ¶12, Ex. C.   Additionally, Gilardi posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement.  *Id.*, ¶14.

The combination of individual First-Class Mail to all potential Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances."   Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, No. 11-CV-1788(CBA)(RLM), 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'"). Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions.  *E.g.*, *Christine Asia*, 2019 WL 5257534, at *16 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *Dornberger v. Metro Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VI.    CONCLUSION

The $95 million Settlement obtained by Plaintiff and Class Counsel represents a substantial recovery for the Class, particularly in light of the significant litigation risks Plaintiff faced, including the very real risk of the Class receiving no recovery at all.  For the foregoing reasons, Plaintiff

respectfully requests that the Court approve the proposed Settlement and Plan as fair, reasonable, and adequate.

DATED:  August 10, 2021                     Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            DAVID A. ROSENFELD
                                            WILLIAM J. GEDDISH
                                            CHRISTOPHER T. GILROY


                                            _____s/ David A. Rosenfeld_____
                                                DAVID A. ROSENFELD

                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            srudman@rgrdlaw.com
                                            drosenfeld@rgrdlaw.com
                                            wgeddish@rgrdlaw.com
                                            cgilroy@rgrdlaw.com

4849-3865-5732.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (NY Bar No. DD9425)
ELLEN GUSIKOFF STEWART (*pro hac vice*)
STEVEN W. PEPICH (*pro hac vice*)
DOUGLAS R. BRITTON (*pro hac vice*)
JONAH H. GOLDSTEIN (*pro hac vice*)
X. JAY ALVAREZ (*pro hac vice*)
KEVIN A. LAVELLE (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
elleng@rgrdlaw.com
jaya@rgrdlaw.com
stevep@rgrdlaw.com
dougb@rgrdlaw.com
jonahg@rgrdlaw.com
klavelle@rgrdlaw.com
mbalotta@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LABATON SUCHAROW LLP
JONATHAN GARDNER
CHRISTINE M. FOX
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com

Additional Counsel for Lead Plaintiff

## CERTIFICATION OF COMPLIANCE

Pursuant to the Individual Practices of Judge John G. Koeltl, dated July 23, 2021, the undersigned certifies that the Memorandum of Law in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation complies with all formatting rules and contains 6,343 words, excluding the cover page, this certification of compliance, table of contents, table of authorities, and counsels' signature blocks.

_____
s/ David A. Rosenfeld
DAVID A. ROSENFELD

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on August 10, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to received such notice.  I further certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed August 10, 2021, at Melville, New York.

/s/ DAVID A. ROSENFELD
DAVID A. ROSENFELD