UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
CARRIE SCHEUFELE, JEFFREY : Civil Action No. 1:17-cv-05753-JGK
SCHEUFELE and NICHOLAS ORAM, :
Individually and on Behalf of All Others : CLASS ACTION
Similarly Situated, :
                                      : MEMORANDUM OF LAW IN SUPPORT
                    Plaintiffs, : OF CLASS COUNSEL'S MOTION FOR AN
                                      : AWARD OF ATTORNEYS' FEES AND
                                      : EXPENSES
      vs. :
                                      :
TABLEAU SOFTWARE, INC., CHRISTIAN :
CHABOT, THOMAS WALKER, PATRICK :
HANRAHAN and CHRISTOPHER STOLTE, :
                                      :
                    Defendants. :
                                      :
———————————————————— x

4852-2577-4068.v1

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................1

II.     HISTORY AND BACKGROUND OF THE LITIGATION...............................3

III.    ARGUMENT .....................................................................................................3

        A.      Class Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
                from the Common Fund...........................................................................3

        B.      The Court Should Award a Reasonable Percentage of the Common Fund............4

        C.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
                the-Fund Method......................................................................................6

        D.      The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied...........8

        E.      The Relevant Factors Confirm that the Requested Fee Is Reasonable .................10

                1.      The Time and Labor Expended by Counsel ...............................................11

                2.      The Risks of the Litigation ......................................................................12

                3.      The Magnitude and Complexity of the Litigation ....................................15

                4.      The Quality of Representation Supports the Requested Fee ....................16

                5.      Public Policy Considerations....................................................................17

                6.      The Class' Reaction to the Fee Request to Date Supports the
                        Requested Fee .........................................................................................18

IV.     COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO
        THE PROSECUTION OF THIS LITIGATION ...............................................18

V.      CONCLUSION................................................................................................19

4852-2577-4068.v1

## CASES

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...............................................................................14

*Aponte v. Comprehensive Health Mgmt., Inc.*,
    No. 10 Civ. 4825(JLC), 2013 WL 1364147
    (S.D.N.Y. Apr. 2, 2013)........................................................................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)...............................................................................................4

*Bellifemine v. Sanofi-Adventis U.S. LLC*,
    No. 07 Civ. 2207 (JGK), 2010 WL 3119374
    (S.D.N.Y. Aug. 6, 2010).........................................................................................9

*Blum v. Stenson*,
    465 U.S. 886 (1984)...........................................................................................5, 7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...............................................................................................3

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ................................................................................6

*Chatelain v. Prudential-Bache Sec. Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534
    (S.D.N.Y. Oct. 16, 2019) ............................................................................7, 9, 15

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132 (CM), 2014 WL 1883494
    (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ...............................................................3, 5, 8, 16

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................................5

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..................................................................................12

*Ellenburg III v. JA Solar Holdings Co., Ltd.*,
    No. 1:08-cv-10475-JGK, slip op. (June 30, 2011).................................................9

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ..............................................................................6

**Page**

*Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*,
925 F.3d 63 (2d Cir. 2019),
*cert denied*, __U.S.__, 140 S. Ct. 385 (2019)......................................................3, 4

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................ *passim*

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ...................................................................................5

*Hayes v. Harmony Gold Mining Co., Ltd.*,
509 F. App'x 21 (2d Cir. 2013) ...............................................................................4

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ..........................................................................................4

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................14

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................6, 13

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 02 Civ. 5575(SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006)...........................................................................................15

*In re Bayer AG Sec. Litig.*,
No. 03 Civ. 1546 (WHP), 2008 WL 5336691
(S.D.N.Y. Dec. 15, 2008).........................................................................................15

*In re BHP Billiton Ltd. Sec. Litig.*,
No. 1:16-cv-01445-NRB, 2019 WL 1577313
(S.D.N.Y. Apr. 10, 2019), *aff'd sub nom.*
*City of Birmingham Ret. Sys. v. Davis*,
806 F. App'x 17 (2d Cir. 2020) ...........................................................................7, 9

*In re Bisys Sec. Litig.*,
No. 04 Civ. 3840 (JSR), 2007 WL 2049726
(S.D.N.Y. July 16, 2007) .........................................................................................16

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 WL 1899715
(S.D.N.Y. May 13, 2011).........................................................................................18

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)....................................................................6, 8

- iii -

Page

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354
(E.D.N.Y. June 24, 2010) .................................................................................................9, 12

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .......................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ........................................................................................ *passim*

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................6, 19

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).............................................................................................5

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)..............................................................................10, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)............................................................................18

*In re Intercept Pharms., Inc. Sec. Litig.*,
No. 1:14-cv-01123-NRB, slip op.
(S.D.N.Y. Sept. 8, 2016) ................................................................................................7

*In re Interpublic Sec. Litig.*,
No. 02 Civ. 6527 (DLC), 2004 WL 2397190
(S.D.N.Y. Oct. 26, 2004) ...............................................................................................4

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
No. 12-cv-2548(VSB), 2019 WL 4734396
(S.D.N.Y. Sept. 23, 2019) ..............................................................................................7

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW (EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007)..............................................................................................14

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................14, 17

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988-SI, 2009 WL 1709050
(N.D. Cal. June 19, 2009), *aff'd*,
627 F.3d 376 (9th Cir. 2010) .........................................................................................14

- iv -

Page

*In re Patriot Nat'l Inc. Sec. Litig.*,
   No. 1:17-cv-01866-ER, 2019 WL 5882171
   (S.D.N.Y. Nov. 6, 2019) ........................................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................5

*In re Pfizer Inc. Sec. Litig.*,
   No. 04-cv-09866 (LTS)(HBP), slip op.
   (S.D.N.Y. Dec. 21, 2016).......................................................................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ......................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)................................................................................18

*In re Sadia S.A. Sec. Litig.*,
   No. 08 Civ. 9528 (SAS), 2011 WL 6825235
   (S.D.N.Y. Dec. 28, 2011).....................................................................................13

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...........................................................3, 9, 12

*In re Thirteen Appeals Arising out of the San Juan*
   *Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295, 305 (1st Cir. 1995) ...........................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808
   (S.D.N.Y. Nov. 7, 2007) ...........................................................................3, 6, 17

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964)...............................................................................................4

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ..................................................................................5

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................6, 17

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)...........................................................................................6, 9

*N.J. Carpenter Health Fund v. DLJ Mortgage Capital, Inc.*,
   No 1:08-cv-05653-PAC, slip op.
   (S.D.N.Y. May 10, 2016)......................................................................................7

- v -

Page

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ....................................................................................5

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) ..........................................................................................5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................................14

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)........................................................................................5

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ......................................................................................6

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261
    (S.D.N.Y. May 14, 2004)....................................................................................12, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ......................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................4, 5, 9

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    No. 14-CV-8925 (KMW), 2017 WL 3579892
    (S.D.N.Y. Aug. 18, 2017) ........................................................................................17

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(6) ................................................................................................................6

## I.      INTRODUCTION

After nearly four years of hard-fought litigation, Class Counsel secured an outstanding $95,000,000 settlement for the benefit of the Class.  The Settlement is an excellent result for the Class given the serious obstacles to recovery, the credible defenses to liability and damages that Defendants have articulated, the fact that the Court might have accepted those arguments on the upcoming motion for summary judgment, and the recovery relative to the amount of estimated recoverable damages suffered by the Class.[1]  To obtain this Settlement, Plaintiff and Class Counsel overcame a number of significant challenges during the course of the Litigation, including a partial reopening of discovery given Tableau's late disclosure of previously-unproduced documents, that would likely delay the trial.  *See* Rosenfeld Decl., ¶¶52-55.  In recognition of these risks and the excellent result obtained, Class Counsel now respectfully moves this Court for an award of attorneys' fees of 28% of the Settlement Amount (a fee negotiated with Plaintiff after the Settlement was reached), and $1,057,881.05 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation, plus interest on both amounts.[2]

---

[1]      Capitalized terms used herein are defined and have the meanings contained in the Stipulation of Settlement (ECF No. 173) (the "Stipulation"), the accompanying Declaration of David A. Rosenfeld in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses ("Rosenfeld Decl."), and in the Memorandum of Law in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith. Internal citations are omitted and emphasis is added throughout unless otherwise noted.

[2]      Class Counsel means Robbins Geller Rudman & Dowd LLP.  Plaintiff's Counsel means Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP.  *See* Declaration of David A. Rosenfeld Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."); Declaration of Christine M. Fox Filed on Behalf of Labaton Sucharow LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Labaton Sucharow Decl."), submitted herewith.

4852-2577-4068.v1

As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Significantly, following an extensive Court-ordered notice program in which over 78,800 Notices were mailed to potential Class Members and nominees, to date not a single Class Member has objected to the requested fees or the expenses (not to exceed $1,500,000, as set forth in the Notice).[3]

As detailed below, in the Rosenfeld Declaration, and in the Settlement Memorandum, the Settlement achieved here following four years of intense litigation against determined adversaries, represents an excellent result for Plaintiff and the Class, particularly when judged in the context of the significant litigation risks in this action. The $95 million Settlement that Class Counsel and Plaintiff obtained provides the Class with an immediate and certain recovery in a case that faced significant risks to establishing falsity, scienter, and loss causation. Rosenfeld Decl., ¶¶89-96. In achieving this result, Plaintiff's Counsel worked 24,800 hours over the course of more than four years on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Class Counsel believes that an attorney fee award of 28%, together with payment of litigation expenses, properly reflects the many significant risks taken by Class Counsel in prosecuting the action, as well as the result achieved. When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees of 28% – which was negotiated by Plaintiff after the Settlement was reached – is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases. In addition, the expenses requested by Plaintiff's Counsel are reasonable in amount.

---

[3]    As of the date of this fee memorandum, which is before the August 24, 2021 deadline for filing objections, Class Counsel has not received any objection to the fee and expense request. If any timely objections are received from Class Members, Class Counsel will address them in its reply brief, which will be filed with the Court no later than September 7, 2021.

- 2 -

## II.     HISTORY AND BACKGROUND OF THE LITIGATION

A detailed description of Plaintiff's claims and Plaintiff's Counsel's vigorous prosecution of this case (including key pleadings, exhaustive fact and expert discovery, motions, and mediation efforts) are set forth in the accompanying Rosenfeld Declaration. For the sake of brevity, the Court is respectfully referred to that declaration.

## III.    ARGUMENT

### A.    Class Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019), *cert denied*, __U.S.__, 140 S. Ct. 385 (2019). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally toward the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2. Indeed, the Supreme Court has emphasized that

private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to this precedent.  *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'"); *Fresno Cnty.*, 925 F.3d at 68.  Fairly compensating Class Counsel for the risks they took in bringing this action is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."  *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### B.   The Court Should Award a Reasonable Percentage of the Common Fund

Class Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained.  Courts routinely find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that it creates, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co., Ltd.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class.").  The percentage approach also recognizes that the quality of counsel's

- 4 -

services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[4]

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Indeed, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores*, 396 F.3d at 121; *see also City of Providence*, 2014 WL 1883494, at *11-*12.[5]

---

[4]    *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . . The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (The "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys.").

[5]    All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common-fund cases. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Powers v. Eichen*, 229

- 5 -

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as well as the trend among the district courts in this Circuit and the language of the PSLRA, the Court should award attorneys' fees based on a percentage of the fund.

### C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). An "'ideal proxy' for the award should reflect the fees upon which common fund plaintiffs negotiating in an efficient market for legal services would agree." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352

---

F.3d 1249, 1256 (9th Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits require the use of the percentage method in common-fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

(S.D.N.Y. 2014).  Here, Plaintiff negotiated a 28% fee after the Settlement was reached.  If this were

a non-class action, the customary fee arrangement would be contingent and in the range of 33% of

the recovery.  *See Blum*, 465 U.S. at 903 ("'In tort suits, an attorney might receive one-third of

whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to

the recovery.'") (Brennan, J., concurring).

Class Counsel's efforts have resulted in a $95 million settlement.  This recovery of at least

11% of maximum recoverable damages is an outstanding result in a pre-trial settlement in a major

PSLRA case.  The percentage of the Settlement Fund that Class Counsel requests it be paid is fair

and reasonable in light of the substantial benefit Class Counsel's work has conferred on the Class.

The requested 28% fee is well within the range of percentage fees awarded by courts within

the Second Circuit in other comparable securities cases.  *See, e.g.*, *In re Patriot Nat'l Inc. Sec. Litig.*,

No. 1:17-cv-01866-ER, 2019 WL 5882171, at *1 (S.D.N.Y. Nov. 6, 2019) (awarding 33-1/3% fee

plus expenses); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM)(SDA), 2019 WL

5257534, at *18 (S.D.N.Y. Oct. 16, 2019) (awarding 25% of $250 million settlement); *In re J.P.

Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548(VSB), 2019 WL 4734396, at *6 (S.D.N.Y.

Sept. 23, 2019) (awarding one-third of $75 million recovery); *In re BHP Billiton Ltd. Sec. Litig.*, No.

1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding fees of 30% of

$50 million recovery, plus expenses), *aff'd sub nom. City of Birmingham Ret. Sys. v. Davis*, 806 F.

App'x 17 (2d Cir. 2020); *In re Intercept Pharms., Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, slip op.

at 1 (S.D.N.Y. Sept. 8, 2016), ECF No. 136 (awarding fees of 28.63% of $55 million recovery, plus

expenses; *In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866 (LTS)(HBP), slip op. at 2 (S.D.N.Y. Dec.

21, 2016), ECF No. 727 (awarding 28% of $486 million settlement); *N.J. Carpenter Health Fund v.*

*DLJ Mortgage Capital, Inc.*, No 1:08-cv-05653-PAC, slip op. at 2-3 (S.D.N.Y. May 10, 2016), ECF No. 277 (awarding 28% of $110 million settlement).

### D.     The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied

When using the percentage-of-the-fund method, courts can also look to "hours as a 'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353.  When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The lodestar method requires a two-part analysis:  "first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *City of Providence*, 2014 WL 1883494, at *13.  Performing the lodestar calculation here confirms that the fee requested by Class Counsel is reasonable and should be approved.

Plaintiff's Counsel and their paraprofessionals spent 24,800.10 hours prosecuting this case, producing a total lodestar amount of $15,156,582.25 when multiplied by counsel's billing rates. *See* Robbins Geller Decl. ¶4; Labaton Sucharow Decl., ¶4.[6]  The amount of attorneys' fees requested by

---

[6]     In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status.  Here, the lawyers and paraprofessionals at Class Counsel are experienced securities practitioners with track records of success, and among the most prominent and well-regarded securities practitioners in the nation.  Class Counsel's hourly rates are reasonable and have recently been judicially approved. *See* Hr'g Tr. at 160:22-24, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40(AKH) (S.D.N.Y. Jan. 23, 2020) ("I find your lodestar reasonable, the rates appropriate and, in relationship to the work that you did, reasonable") (Ex. A hereto); Hr'g Tr. at 25:12-16, *Kaess v. Deutsche Bank AG*, No. 09-cv-01714 (GHW)(RWL) (S.D.N.Y. June 11, 2020) ("I find these billable rates [for Robbins Geller] based on the timekeeper's

Class Counsel herein, $26,600,000, represents a slight multiplier of 1.75 to Plaintiff's Counsel's lodestar.[7]

In cases of this nature, fees representing multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Accordingly, in complex contingent litigation, lodestar multipliers of between 2 and 5 have been commonly awarded. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5); *Christine Asia*, 2019 WL 5257534, at *19 (awarding fee representing a 2.15 multiplier, which court found to be "well within the range commonly awarded in securities class actions of this complexity and magnitude"); *BHP Billiton*, 2019 WL 1577313, at *1-*2 (awarding fee representing 2.7 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."). This Court has also awarded multipliers over 2. *See Bellifemine v. Sanofi-Adventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) (multiple of 2.05); *Ellenburg III v. JA Solar Holdings Co., Ltd.*, No. 1:08-cv-10475-JGK, slip op. at 3 (June 30, 2011), ECF No. 88 (multiplier of 2.10).

---

title, specific years of experience, and market rates for similar professionals in their fields . . . to be reasonable in this context.") (Ex. B hereto).

[7]   The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

Here, while shouldering the risk of non-recovery, Plaintiff's Counsel litigated this case on a contingency basis for more than four years, working 24,800 hours for the benefit of the Class. Accordingly, the modest lodestar multiplier here is reasonable under the circumstances.

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 196 (E.D. Pa. 2000) ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). Plaintiff's Counsel invested substantial time and effort prosecuting this Litigation against Defendants to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Plaintiff's Counsel's lodestar.

As detailed in the Rosenfeld Declaration, based on their efforts in litigating this case and producing an excellent result, Plaintiff's Counsel believe the requested fee, whether calculated as a percentage of the fund or in relation to counsel's lodestar, is manifestly reasonable. Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

### E.     The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- 10 -

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested fee is fair and reasonable.

### 1.      The Time and Labor Expended by Counsel

Plaintiff's Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class.  Since the Litigation began in July 2017, Plaintiff's Counsel and their paraprofessionals devoted 24,800 hours to prosecuting the Class' claims.  As detailed in the Rosenfeld Declaration, submitted herewith, counsel, among other things:

- conducted an extensive factual investigation into the underlying facts;

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted a detailed amended complaint;

- successfully opposed Defendants' motion to dismiss the complaint for failure to state a claim;

- requested, negotiated for, received and analyzed more than two million pages of documents produced by Defendants and third parties;

- took or defended over two dozen fact and expert depositions;

- obtained class certification over Defendants' vigorous opposition and thereafter provided notice of the pendency of this Litigation to Class Members;

- prepared for and participated in two mediation sessions, one with former Ambassador Bleich and one with former Judge Phillips; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

*See generally* Rosenfeld Decl.

- 11 -

Moreover, Class Counsel, with the assistance of its damages expert, prepared the proposed Plan of Allocation based primarily on an analysis estimating the amount of artificial inflation in the price of Tableau common stock during the Class Period.  Throughout the Litigation, Class Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Moreover, additional hours and resources will necessarily be expended assisting Members of the Class with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries.  *See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825(JLC), 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).  The significant amount of time and effort devoted to this case by Class Counsel to obtain a $95 million recovery, work that will not end with the Court's approval of the Settlement, confirms that the 28% fee request is reasonable.

### 2.    The Risks of the Litigation

#### a.    The Contingent Nature of Class Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger* factor.  *Goldberger*, 209 F.3d at 54; *Converse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592.  The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14,

2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). When considering the reasonableness of attorneys' fees in a contingency action, the court should consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at 55; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

Plaintiff's Counsel undertook this Litigation on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute a risky action with no guarantee of compensation or even the recovery of expenses. Unlike Defendants' Counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiff's Counsel have not been compensated for any time or expenses since this case began in July 2017, and would have received no compensation or payment of their expenses had this case not been resolved successfully.

From the outset, Plaintiff's Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require. In undertaking that responsibility, Plaintiff's Counsel were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs that a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

4852-2577-4068.v1

In addition to advancing litigation expenses, Plaintiff's Counsel faced the possibility that they would receive no attorneys' fees at all.  Indeed, it is possible that, if not for this Settlement, the entire case may have been disposed of in response to Defendants' forthcoming motion for summary judgment.[8]

Losses in contingent-fee litigations, especially those brought under the PSLRA, are exceedingly expensive.  Plaintiff's Counsel's assumption of the contingency fee risk strongly supports the reasonableness of the requested fee.  *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.      Risks of Establishing Liability and Damages

While Plaintiff remains confident in its claims, its ability to ultimately prove liability was far from certain.  As detailed in the Rosenfeld Declaration and in the Settlement Memorandum,

---

[8]     Moreover, it is wrong to presume that a law firm handling complex contingent litigation always wins.  There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration, despite their diligence and expertise.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiff's favor); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss-causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

Defendants raised numerous challenges to Plaintiff's allegations of falsity, scienter, loss causation, and damages.  Rosenfeld Decl., ¶¶89-92.  Even assuming *arguendo* that Plaintiff was able to overcome Defendants' likely summary judgment and *Daubert* motions, these arguments would no doubt be raised again prior to and at trial.  Therefore, whether Plaintiff ultimately would prove liability under the Exchange Act was far from assured.

Moreover, there is no way to know how a jury would decide these issues.  The damage assessments of the parties' respective trial experts would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Plaintiff prevailed as to liability at trial, the judgment obtained might well be only a fraction of the damages claimed.

### 3.  The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that "shareholder actions are notoriously complex and difficult to prove."  *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia*, 2019 WL 5257534, at *18 ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'").  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *Ikon*, 194 F.R.D. at 194; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly

- 15 -

with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described in the Rosenfeld Declaration, this Litigation involved a number of difficult and complex questions concerning liability, loss causation, and damages in a case in the ever-evolving and highly-competitive computer software industry that would have required extensive additional efforts by Class Counsel in preparing for trial.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 28% fee. *City of Providence*, 2014 WL 1883494, at *16.

### 4.   The Quality of Representation Supports the Requested Fee

The quality of the representation by Plaintiff's Counsel is another important factor that supports the reasonableness of the requested fee. Plaintiff's Counsel submit that the quality of the representation here is best evidenced by the quality of the result achieved. *See, e.g.*, Settlement Memorandum at §III.C.; *see also Flag Telecom*, 2010 WL 4537550, at *28; *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007). Plaintiff's Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case. Plaintiff's Counsel are experienced securities class action and complex litigation practitioners. *See* Robbins Geller Decl., Ex. G; Labaton Sucharow Decl., Ex. D. This Settlement is attributable to the diligence, determination, hard work, and reputation of counsel, who developed, litigated, and successfully negotiated the Settlement of this Litigation and a substantial cash recovery in a very difficult case, without the risk of trial. *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

4852-2577-4068.v1

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms").  Here, Defendants are represented by lawyers from Cooley LLP, who presented skilled defenses and spared no effort in representing their clients.  Notwithstanding this formidable opposition, Class Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Litigation through trial and then inevitable appeals enabled Class Counsel to achieve a very favorable Settlement for the benefit of the Class.

### 5.    Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate [Class] Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").  Accordingly, public policy favors granting Class Counsel's fee and expense application here.

6.    **The Class' Reaction to the Fee Request to Date Supports the Requested Fee**

To date, the Claims Administrator has sent more than 78,800 copies of the Notice to potential Class Members and nominees informing them, *inter alia*, that Class Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 28% of the Settlement Amount, plus expenses not to exceed $1,500,000, plus interest on both amounts.[9]  The time to object to the fee request expires on August 24, 2021.  To date, however, not a single objection to the fee and expense amounts set forth in the Notice has been received.  Such a "low level of objection is a 'rare phenomenon.'"  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  The fact that no objections have been received to date supports the fairness of the fee request.

IV.   **COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO THE PROSECUTION OF THIS LITIGATION**

Plaintiff's Counsel also respectfully request an award of $1,057,881.05 in expenses incurred while prosecuting the Litigation.  Submitted herewith are declarations regarding these expenses, which are properly recovered by counsel.  *See* Robbins Geller Decl., ¶¶5-6; Labaton Sucharow Decl., ¶¶5-6.  *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302

---

[9]    *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, Ex. A (Notice).

F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Plaintiff's Counsel's expenses include, for example, the costs of hiring experts and consultants, travel, document management, publishing notice of the pendency of the action as a certified class action, mediating the Class' claims, and computerized research. A complete breakdown by category of the expenses incurred is set forth in the accompanying Robbins Geller and Labaton Sucharow declarations. These expenses were critical to Plaintiff's Counsel's success in achieving the Settlement. *See Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). So far, not a single objection to the expense amount set forth in the Notice has been received. Accordingly, Plaintiff's Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.   CONCLUSION

Class Counsel's efforts over the last four years have resulted in an outstanding result for the Class. Based on the foregoing, and the entire record herein, Class Counsel respectfully requests that

4852-2577-4068.v1

the Court award attorneys' fees of 28% of the Settlement Amount, plus expenses in the amount of

$1,057,881.05, plus interest on both amounts.

DATED:  August 10, 2021                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           SAMUEL H. RUDMAN
                                           DAVID A. ROSENFELD
                                           WILLIAM J. GEDDISH
                                           CHRISTOPHER T. GILROY


                                                    s/ David A. Rosenfeld
                                           _____
                                                DAVID A. ROSENFELD

                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)
                                           srudman@rgrdlaw.com
                                           drosenfeld@rgrdlaw.com
                                           wgeddish@rgrdlaw.com
                                           cgilroy@rgrdlaw.com

4852-2577-4068.v1

ROBBINS GELLER RUDMAN
   & DOWD LLP
DANIEL S. DROSMAN (NY Bar No. DD9425)
ELLEN GUSIKOFF STEWART (*pro hac vice*)
STEVEN W. PEPICH (*pro hac vice*)
DOUGLAS R. BRITTON (*pro hac vice*)
JONAH H. GOLDSTEIN (*pro hac vice*)
X. JAY ALVAREZ (*pro hac vice*)
KEVIN A. LAVELLE (*pro hac vice*)
MATTHEW J. BALOTTA (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
elleng@rgrdlaw.com
stevep@rgrdlaw.com
dougb@rgrdlaw.com
jonahg@rgrdlaw.com
jaya@rgrdlaw.com
klavelle@rgrdlaw.com
mbalotta@rgrdlaw.com

Class Counsel for Lead Plaintiff

LABATON SUCHAROW LLP
JONATHAN GARDNER
CHRISTINE M. FOX
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com

Additional Counsel for Lead Plaintiff

## CERTIFICATION OF COMPLIANCE

Pursuant to the Individual Practices of Judge John G. Koeltl, dated July 23, 2021, the undersigned certifies that the Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Expenses complies with all formatting rules and contains 6,389 words, excluding the cover page, this certification of compliance, table of contents, table of authorities, and counsels' signature blocks.

s/ David A. Rosenfeld
_____
DAVID A. ROSENFELD

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on August 10, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to received such notice.  I further certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed August 10, 2021, at Melville, New York.

/s/ DAVID A. ROSENFELD
DAVID A. ROSENFELD